IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT LINDENBAUM, | : | CIVIL ACTION |
| Plaintiff, | : | NO. 10-00285 |
| v. | : | |
| DAVID ERENIUS, et al., | : | |
| Defendants. | : | |

**OPINION AND ORDER**

Slomsky, J.                                                                                                              June 9, 2010

## I.     INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 5). Plaintiff filed a Brief in Opposition (Doc. No. 6) and the Court held a hearing on the Motion on May 19, 2010. Upon consideration of the parties' briefs, exhibits, and oral arguments, and after an independent review of the allegations in the Complaint, Defendants' Motion to Dismiss will be granted and Plaintiff's Complaint will be dismissed.

## II.    FACTUAL BACKGROUND

On January 22, 2010, Plaintiff filed a Complaint against Defendant Warminster Township (hereinafter "Defendant Township"), and Defendant David Erenius (hereinafter "Officer Erenius"), a Warminster Township Police Officer, alleging violations of Plaintiff's civil rights under 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution.

Count One alleges that Officer Erenius violated Plaintiff's Fourth Amendment right not to be subject to unreasonable seizures. Plaintiff alleges that Officer Erenius drafted an affidavit of probable cause which led to his arrest, when, in fact, there was no probable cause. (Compl. ¶¶ 27-32.) Officer Erenius is sued in Count One only in his individual capacity. Count Two alleges that Defendant Township violated Plaintiff's Fourth Amendment rights by either (1) failing to train its police officers, or inadequately training its officers, on the proper legal standard applicable to affidavits of probable cause, or (2) inadequately supervising its officers which allowed them to continue to violate the rights of citizens despite any training afforded to them. (Id. at ¶ 36-39.)

The crux of this dispute centers upon an affidavit of probable cause drafted by Officer Erenius. This affidavit led to the issuance of an arrest warrant by a duly authorized magistrate for the arrest of Plaintiff for the crimes of terroristic threats (18 Pa.C.S. § 2706(a)(1)), harassment (18 Pa.C.S. § 2709(a)(4)), and criminal conspiracy to promote or facilitate the crime of terroristic threats (18 Pa.C.S. § 903).[1] (Id. at ¶ 20.)

The affidavit of probable cause, prepared by Officer Erenius, states in full:

**AFFIDAVIT OF PROBABLE CAUSE**[2]

On January 5, 2008 at approximately 2230 hrs, I was on duty and in full uniform operating a fully marked patrol vehicle. I was dispatched

---

[1] On January 23, 2008, the arrest warrant was issued by Bucks County Magisterial District Judge Daniel J. Finello, Jr., Magisterial District Court 07-1-09.

[2] The affidavit includes a transcription of two threatening telephone messages which contained copious amounts of profane and vulgar language. For purposes of this Opinion, the Court has adapted the most obscene words to reduce the amount of profanity that will be published. However, the Court notes that the affidavit does quote directly from the messages without making such stylistic changes.

2

via Bucks County Radio Room to [an address in] Warminster Township, Bucks County, for the report of threats via phone by a know [sic] subject.

On scene I spoke with Michael Losse who stated he had two messages on his cell phone, in which he could hear both Andrew and Scott Lindenbaum's voice. He stated the messages were threatening in nature. I asked if he felt the Lindenbaum's [sic] would follow through with the threats and he stated he was afraid they would. Losse stated he was afraid they would show up at the fire house or his home. He told me some friends informed him Scott Lindenbaum had a hand gun he carried in his car.

I asked Losse if he knew why these messages were being left for him. He told me Scott Lindenbaum is dating his ex girl friend Ashley Hughes. Losse stated he had been trying to speak with Hughes and Lindenbaum was upset about that. At this point I listened to both messages.

Message #1 2231 hours, 1/5/08:

Mike it would be, it would behove [sic] you to never say the name Scott Lindenbaum or Ashley Hughes again, (you f**king co*k sucker)[3], Listen all I'm going to say is I don't know you, you don't know me but I know you. Alright listen, if you ever say the name Scott Lindenbaum or Ashley Hughes again it's not going to be in your best interest, (f**k you in the a*s in front of your mother you douche) f**king you in the a*s in front of your mother would be the best thing that could f**king happen to you. Don't f**king ever say the name Scott Lindenbaum or Ashley Hughes again, you hear me you f**king piece of sh*t. You want f**king say his name again your [sic] going f**king be sleeping on the ground tomorrow night you, you hear you

---

[3] At the May 19, 2010 hearing on the Motion to Dismiss, Defense Counsel clarified that the parenthetical phrases in message one were Officer Erenius' attempt to indicate a second voice heard in the background. In response to this argument, Plaintiff contends that it is unclear that the parentheticals indicate a second voice, and that the magistrate may not have understood this intent. Furthermore, Plaintiff argues that there was only one voice on each message, that of Mr. Cherry (message one) and Plaintiff's brother, Andrew Lindenbaum, (message two). For purposes of deciding this Motion to Dismiss, the Court must accept Plaintiff's well-plead factual allegations as true. Therefore, it will be presumed that only one voice was on each message. However, this does not negate the fact that Mr. Losse initially believed, and so informed Officer Erenius, that Plaintiff's voice was heard on the messages.

3

piece of sh*t don't you f**king talk sh*t. Call ended.

Message #2 2232 hours, 1/5/08:

Listen up dog, I don't f**king know you, but I already don't f**king like you mother f**ker. Alright your [sic] talking about my brother, I love my f**king brother. Alright you f**king call you f**k, go near my brother or his girlfriend or him, I'll f**king cut your balls off, cut your f**king neck open and pull your f**king tongue out like you were some f**king dirty hodge mother f**ker. Alright I've killed more people than you've had f**king birthdays mother f**ker. Alright, don't f**k with this sh*t alright. Don't f**k with this sh*t alright. I'll come to your house by my f**king self and (un audible) and all your f**king friends and rape your a*s mother f**ker. I'll f**k you in the a*s in front of your f**king mother, mother f**ker. Alright, try this sh*t, try this sh*t, it would behove [sic] you to shut the f**k up and go live up with your life mother f**ker. Alright move the f**k on bi*ch, some girl dumped you, mother f**ker, become a f**king man, cowboy the f**k up and go f**k some other bi*ch you pathetic mother f**ker. Call ended.

Investigation revealed message #1 was left by [Mr. Cherry][4] and message #2 was left by Andrew Lindenbaum. [Mr. Cherry] reported to the Warminster Police department on 01/07/08 at approximately 2300 hours. I informed [Mr. Cherry] that he was speaking to me by his own free will and that he could leave at any time. He stated he understood. I played the first message for him and asked if he knew who left the message and he stated "I did." I then played the second message for him and asked if he knew who left that message and he stated it was Andrew Lindenbaum.

(Def.'s Motion to Dismiss, Ex. 3 "Affidavit of Probable Cause.")[5]

Thus, as stated in the affidavit of probable cause, the events giving rise to the Complaint

---

[4] This portion of text, indicating the name of caller number one, was redacted by the police because charges against that caller, Mr. Cherry, were dropped. (Hearing, May 19, 2010.) However, counsel agree that the redacted text refers to Mr. Cherry. (Id.)

[5] The Court may consider undisputedly authentic documents that Defendants attach as exhibits to a Motion to Dismiss where Plaintiff's claims are based on those documents. Benefit Guarantee Corp. v. White Consol. Ind., 998 F.2d 1192, 1196 (3d Cir. 1993).

began on January 5, 2008. (Compl., ¶ 7.) At approximately 10:30 p.m. that evening, Officer Erenius was dispatched to an address in Warminster Township where the resident, Michael Losse (hereinafter "the complainant") reported receiving the two threatening telephone messages transcribed above. (Id. at ¶¶ 7-8.) When Officer Erenius arrived at the scene, he listened to the messages. (Id. at ¶ 8.) The callers were men, but they did not identify themselves in the messages. (Id. at ¶ 11, 13.) The only names mentioned in the messages were those of the complainant, Plaintiff, and Plaintiff's girlfriend (Ashley Hughes), who had previously been the complainant's girlfriend.

At approximately 11:00 p.m., Officer Erenius called Plaintiff and asked him "what was going on," without informing Plaintiff about the existence of the threatening messages. (Id. at ¶ 14.) Plaintiff informed Officer Erenius that he did not know what the officer was referring to. (Id.) Officer Erenius began to argue with Plaintiff and told him he was just "some rich boy that thinks he can do whatever he wants." (Id.) Throughout this conversation, Officer Erenius never informed Plaintiff that he was calling in regard to threatening messages. (Id.)

On the following day, January 6, 2008, Officer Erenius called Plaintiff's girlfriend, Ashley Hughes, and asked her to come to the police station to answer some questions about the previous evening's events. (Id. at ¶ 15.) Plaintiff accompanied Ms. Hughes on this visit to the police station. (Id.) Officer Erenius escorted Ms. Hughes into a separate office, away from Plaintiff, and questioned her. (Id. at ¶ 16.) Ms. Hughes told Officer Erenius that she formerly dated the complainant. (Id.) She stated that after their breakup he continued to call her in a harassing manner and he showed up unexpectedly in various places in an effort to talk with her. (Id.) She also informed Officer Erenius that she had prepared documents to file a formal

complaint with the police regarding the complainant's behavior. (Id.) In response, Officer Erenius told her that these documents, which demonstrated complainant's behavior through mid-December 2007, were too old and were therefore irrelevant to the current situation. (Id.) Officer Erenius did not explain to Ms. Hughes the specific allegations the complainant had lodged against Plaintiff, but Officer Erenius did tell Ms. Hughes that he would arrest Plaintiff "if he even talked in the wrong tone." (Id.)

When Ms. Hughes left the office in which she had been questioned by Officer Erenius, she told Plaintiff that "they were leaving and that the police officer ... had told her that if [he] came back to the police station" Plaintiff would be arrested. (Id. at ¶ 17.)

The next day, January 7, 2008, Ryan Cherry appeared at the police station and spoke with Officer Erenius about the messages. (Id. at ¶ 18.) After listening to the first message, Mr. Cherry stated that he was the person who left that message. (Id.) After listening to the second message, Mr. Cherry stated that Andrew Lindenbaum, Plaintiff's brother, left that message. (Id.) Mr. Cherry did not state that Plaintiff was responsible for either of the calls. (Id.)

On January 23, 2008, after conducting the aforementioned investigation and interviews, Officer Erenius drafted the affidavit of probable cause set forth in full supra. (Id. at ¶ 19.) Based upon this affidavit of probable cause, Magisterial District Judge Finello issued a warrant for Plaintiff's arrest on the charges of terroristic threats, harassment, and conspiracy to promote or facilitate terroristic threats. (Id. at ¶ 20.)

On January 25, 2008, at approximately 4:15 p.m., two officers from the Northampton Police Department came to Plaintiff's home and placed him under arrest, pursuant to the arrest warrant that had been issued. (Id. at ¶ 21.) Plaintiff posted bail and was released on January 29,

2008. (Id. at ¶ 24.) On August 1, 2008, the criminal charges against Plaintiff were dropped. (Id. at ¶ 25.)

### III. LEGAL STANDARD

Defendants have moved to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). The Rule 12(b)(6) Motion to Dismiss standard has undergone recent transformation, culminating with the Supreme Court's opinion in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Motion to Dismiss. Id. at 1949; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Applying the principles of Iqbal, the Third Circuit in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009), articulated a two-part analysis that district courts in this Circuit must conduct in evaluating whether allegations in a complaint survive a Motion to Dismiss. First, the factual and legal elements of a claim should be separated, meaning "a District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11. Second, the Court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211. In other words, a complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Id. (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown' – 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950. This "plausibility" determination under step two of the analysis is a "context-specific task that requires the reviewing court to draw on its judicial

7

experience and common sense." Id.

## IV. DISCUSSION

Plaintiff's primary contention is that, based upon the information available to Officer Erenius, he did not have probable cause to believe that a crime had been committed by Plaintiff. (Compl., ¶ 28.) Therefore, Plaintiff's arrest was in violation of his Fourth Amendment right to be free from unreasonable seizures. As discussed below, the Court disagrees and finds that, even viewing the allegations in the light most favorable to Plaintiff, probable cause existed to arrest Plaintiff.

### A. Officer Erenius Had Probable Cause to Obtain the Arrest Warrant

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Probable cause to arrest "exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) (citing Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995)). The Supreme Court has elucidated that "[p]erhaps the central teaching of our decisions bearing on the probable cause standard is that it is a 'practical, nontechnical conception.'" Illinois v. Gates, 462 U.S. 213, 231 (1983). Probable cause is a "fluid concept – turning on the

assessment of probabilities in particular factual contexts – not readily, or even usually, reduced to a neat set of legal rules." Id. at 232. Thus, "'the *quanta* ... of proof' appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant." Id. at 235 (emphasis in original).

In other words, before issuing an arrest warrant, a magistrate need not find proof beyond a reasonable doubt, or by a preponderance of the evidence, that a suspect has committed the crime(s) in question. Id. Such "[f]inely-tuned standards ... have no place in the magistrate's decision.... [I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" Id. Furthermore, as recognized by the Supreme Court, "affidavits 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation[,]" therefore, "[t]echnical requirements of elaborate specificity ... have no proper place in this area." Id. at 235.[6]

In addition, it has long been recognized that a magistrate's probable cause determination should be afforded great deference by reviewing courts. Id. at 236 (noting that a "'grudging or negative attitude by reviewing courts toward warrants' ... is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant"; and that "'courts

---

[6] The Supreme Court has further admonished that:

> If the affidavits submitted by police officers are subjected to the type of scrutiny some courts have deemed appropriate, police might well resort to warrantless searches, with the hope of relying on consent or some other exception to the warrant clause that might develop at the time of the search.

Gates, 462 U.S. at 236. Thus, promoting such hypertechnical scrutiny of affidavits is clearly in conflict with Fourth Amendment precedent.

9

should not invalidate ... warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.'"). Accordingly, the role of this Court is simply to ensure that the magistrate had a "substantial basis" for concluding that probable cause existed. Id. at 238.

The existence of probable cause is typically a question of fact. Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997). However, in the appropriate case, a district court may conclude "that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding." Id.

Where, as in this case, an arrest is made on more than one charge, probable cause need only exist as to any offense that could be charged under the circumstances. Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994). Here, Plaintiff was arrested on three charges: terroristic threats (18 Pa. C.S.A. § 2706), harassment (18 Pa. C.S.A. § 2709), and conspiracy to promote or facilitate the crime of terroristic threats (18 Pa. C.S.A. § 903).

The crime of terroristic threats occurs when, inter alia, a "person communicates, either directly or indirectly, a threat to ... commit any crime of violence with intent to terrorize another." 18 Pa. C.S.A. § 2706(a)(1).

A person is guilty of conspiracy to commit a crime:

> [I]f with the intent of promoting or facilitating its commission he ... agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime.

18 Pa. C.S.A. § 903. In addition, an overt act in pursuance of such conspiracy must be alleged. Id. § 903(c).

A person commits the crime of harassment when, inter alia, "with intent to harass, annoy

or alarm another, the person ... communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings, or caricatures." 18 Pa. C.S.A. § 2709(a)(4).

Under the totality of the circumstances, when viewing the facts in the light most favorable to Plaintiff, it is clear that there was a substantial basis for the magistrate to find probable cause based on the affidavit drafted by Officer Erenius. The salient facts demonstrate that: (1) one of the callers was identified as Plaintiff's brother; (2) the complainant initially identified one of the voices as Plaintiff's, even though the officer noted in the affidavit that this identification was later refuted by another witness, Mr. Cherry, (3) Plaintiff's name was mentioned or referred to in both messages; (4) Plaintiff's girlfriend was mentioned or referred to in both messages; (5) Plaintiff's girlfriend is the complainant's ex-girlfriend; and (6) the entire thrust of the threatening messages warns the complainant not to speak Plaintiff's name and not to come near Plaintiff or his girlfriend.

As noted above, the crime of making terroristic threats occurs when a person "directly *or indirectly*" communicates a threat of violence with intent to terrorize another. 18 Pa. C.S.A. § 2706(a)(1) (emphasis added); see In re L.A., 853 A.2d 388, 392 (Pa. Super. 2004) ("A direct communication between the defendant and the victim is not required to establish the crime of terroristic threats."); Commonwealth v. Kelley, 664 A.2d 123, 127 (Pa. Super. 1995) (noting that "direct communication of threat between the perpetrator and the victim is not a requisite element of the crime of terroristic threats."). Thus, based on the information that was available to Officer Erenius and set forth in the affidavit of probable cause, there was substantial reason to believe that Plaintiff was present when the calls were made, as stated by the complainant, and had committed and/or conspired to commit the crime of terroristic threats and the crime of

harassment. See Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."); Potts v. City of Philadelphia, 224 F. Supp. 2d 919, 934 (E.D. Pa. 2002) ("A police officer, after all, is not obligated 'to conduct a mini-trial' before arresting a suspect.").

As aptly stated by the Supreme Court in U.S. v. Leon, 468 U.S. 897, 914 (1984):

> Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according "great deference" to a magistrate's determination.

Although such deference is not limitless, in this case, the affidavit of probable cause contained sufficient information to allow the magistrate to determine probable cause. The affidavit was not bare bones or conclusory, and Plaintiff's allegation that Officer Erenius omitted material facts is refuted by a plain reading of the affidavit itself. See id. at 915, see also Orsatti, 71 F.3d at 482-83 ("Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt.").[7] Thus, no

---

[7] Plaintiff additionally argues that Officer Erenius recklessly omitted material facts in drafting the affidavit of probable cause. In sum, Plaintiff argues that Officer Erenius omitted the following: (1) that Ms. Hughes informed Officer Erenius that the complainant had been harassing her with phone calls and coming to see her when she no longer wanted to see him; (2) that there were only two voices on the messages and that each one had been positively identified and that neither voice belonged to Plaintiff; and (3) that the complainant was wrong when he identified Plaintiff as being one of the voices on the messages. (Pl.'s Opp. to Motion to Dismiss, 5-7.)

A police officer need not provide a magistrate with every piece of information discovered during an investigation. He need only supply the magistrate with information that a reasonable person would know that a judge would want to know. See Wilson, 212 F.3d at 783 (holding that an officer's omissions in an affidavit of probable cause are made with reckless disregard for the truth only when he "recklessly omits facts that any reasonable person would know that a judge

reasonable person could find that Officer Erenius lacked probable cause to obtain an arrest warrant for Plaintiff, based upon the totality of the circumstances known to Officer Erenius at the time he sought the arrest warrant. Moreover, the affidavit was reviewed by a neutral and detached magistrate who also concluded that there was probable cause for the arrest.

For all of the foregoing reasons, Defendants' Motion to Dismiss Count One as to Officer Erenius will be granted.

B.    **Officer Erenius is Entitled to Qualified Immunity**

Defendants' Motion to Dismiss must also be granted because the above facts establish that Officer Erenius is entitled to qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

---

would want to know.")

In this case, Officer Erenius provided the magistrate with information that the complainant initially identified one of the voices on the messages as Plaintiff. He also informed the magistrate that Ryan Cherry later identified himself as one caller and Andrew Lindenbaum as the second caller. In fact, the affidavit explicitly states "[i]nvestigation revealed message #1 was left by [Mr. Cherry] and message #2 was left by Andrew Lindenbaum." (Def.'s Motion to Dismiss, Ex. 3 "Affidavit of Probable Cause.") Additionally, Officer Erenius explained that the complainant identified himself as the ex-boyfriend of Plaintiff's girlfriend (Ms. Hughes) and explained that the complainant had been trying to speak with Ms. Hughes, which upset Plaintiff. (Id.)  Thus, the magistrate was informed of the positive identification of the callers as being Mr. Cherry and Andrew Lindenbaum, and the magistrate was aware of the fact that the complainant might have ulterior motives in lodging the complaint due to his status as the ex-boyfriend of Plaintiff's girlfriend. Based on this information it is clear that Officer Erenius did not recklessly withhold any material information regarding the alleged callers, nor did he mislead the magistrate. Thus, there is no reason for this Court to second-guess the sufficiency of the affidavit or the magistrate's probable cause determination. See Gates, 462 U.S. at 235 ("we have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'")

13

Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity is "'an entitlement not to stand trial or face the other burdens of litigation.' The privilege is 'an *immunity from suit* rather than a mere defense to liability.'" Saucier v. Katz, 533 U.S. 194, 200 (2001) (emphasis in original) (citations omitted). As such, courts should resolve qualified immunity questions at the earliest possible stage of litigation. Id. at 201.

In Saucier, the Supreme Court announced a two-step sequence for resolving a qualified immunity claim. First, the court must determine whether the facts alleged by Plaintiff make out a violation of a constitutional right. Id. Second, only if Plaintiff has made out such a violation, the court should proceed to determine whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. Id. In Pearson, 129 S. Ct. 808, the Supreme Court reaffirmed that the two-pronged analysis in Saucier is still appropriate, but held that district courts may use their sound discretion in deciding which of the two prongs should be addressed first under the circumstances of each particular case.

Having found that Officer Erenius had probable cause to obtain the arrest warrant for Plaintiff, the Court finds that Plaintiff has failed to make out a violation of any constitutional right. Moreover, under the facts here, a reasonable person in Officer Erenius' position would not have known that a clearly established constitutional right was even remotely being violated by his drafting and presenting to a magistrate the affidavit of probable cause. Accordingly, Officer Erenius is entitled to qualified immunity.

### C. Plaintiff Has Failed to State a Municipal Liability Claim

In addition to the Fourth Amendment claim lodged against Officer Erenius, Plaintiff has

alleged a municipal liability claim against Warminster Township for a failure to properly train Officer Erenius in the law regarding probable cause and the process for applying for an arrest warrant. As noted above, the Court finds that Officer Erenius did have probable cause to obtain the arrest warrant for Plaintiff. Therefore, Officer Erenius did not violate Plaintiff's Fourth Amendment rights.

A municipality "cannot be held liable for false arrest under § 1983 unless one of its police officers is primarily liable." Potts, 224 F. Supp. 2d at 934 n.6. Accordingly, having found that Officer Erenius had probable cause to arrest Plaintiff, Plaintiff's municipal liability claim against Defendant Township must fail and Defendants' Motion to Dismiss Count Two as to Warminster Township will be granted.

## V.      CONCLUSION

The Court finds as a matter of law that the affidavit of probable cause drafted by Officer Erenius contained sufficient information to support the magistrate's probable cause determination and the issuance of an arrest warrant. Therefore, even construing the facts alleged in the light most favorable to Plaintiff, the Court is satisfied that there was probable cause to arrest Plaintiff. Accordingly, Defendants' Motion to Dismiss will be granted and Plaintiff's complaint will be dismissed in its entirety. An appropriate order follows.